**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------
ELAINE WANG,                                            :
                                                        :
       Plaintiff,                                :   Civil Action No. 1:21-cv-10143
                                                        :
v.                                                      :   **COMPLAINT FOR VIOLATIONS OF**
                                                        :   **SECTIONS 14(a) AND 20(a) OF THE**
UMPQUA HOLDINGS CORPORATION,                            :   **SECURITIES EXCHANGE ACT OF**
PEGGY YVONNE FOWLER, BRYAN L.                           :   **1934**
TIMM, STEPHEN M. GAMBEE, JAMES                          :
SCOTT GREENE, LUIS FERNANDO                             :   **JURY TRIAL DEMANDED**
MACHUCA, CORT LANE O'HAVER,                             :
MARIA MACGREGOR POPE, JOHN F.                           :
SCHULTZ, SUSAN F. STEVENS, HILLARD                      :
C. TERRY III, ANDDRIA CLACK-ROGERS                      :
VARNADO,                                                :
                                                        :
       Defendants.                               :
---------------------------------------------------------  :

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.  This is an action brought by Plaintiff against Umpqua Holdings Corporation ("Umpqua or the "Company") and the members Umpqua's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Umpqua and Columbia Banking System, Inc. and its affiliates ("Columbia Banking System").

2.      Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on November 22, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Picasso Merger Sub, Inc., a wholly owned subsidiary of Columbia Banking System, will merge with and into Umpqua with Umpqua surviving as a wholly owned subsidiary of Columbia Banking System (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Umpqua stockholder will receive 0.5958 of a share Columbia Banking System stock (the "Merger Consideration").

3.      As discussed below, Defendants have asked Umpqua's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Umpqua's stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Umpqua trades on the NASDAQ Stock Exchange, which is incorporated in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Umpqua stocks and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant Peggy Yvonne Fowler has served as a member of the Board since April 2009 and is the Chair of the Board.

11. Individual Defendant Bryan L. Timm has served as a member of the Board since December 2004 and is the Vice Chairman of the Board.

12. Individual Defendant Stephen M. Gambee has served as a member of the Board since July 2005.

13. Individual Defendant James Scott Greene has served as a member of the Board since July 2012.

14. Individual Defendant Luis Fernando Machuca has served as a member of the Board since January 2010.

15. Individual Defendant Cort Lane O'Haver has served as a member of the Board since January 2017 and is the Company's President and Chief Executive Officer.

16. Individual Defendant Maria MacGregor Pope has served as a member of the Board since January 2018.

17. Individual Defendant John F. Schultz has served as a member of the Board since September 2015.

18. Individual Defendant Susan F. Stevens has served as a member of the Board since September 2012.

19. Individual Defendant Hillard C. Terry III has served as a member of the Board since January 2010.

20. Individual Defendant Anddria Clack-Rogers Varnado has served as a member of the Board since October 2018.

21. Defendant Umpqua an Oregon corporation and maintains its principal offices at One SW Columbia Street, Suite 1200, Portland, Oregon 97204. The Company's stock trades on the NASDAQ Stock Exchange under the symbol "UMPQ."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Individual Defendants" or the "Board."

23. The defendants identified in paragraphs 10-21 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A. **The Proposed Transaction**

24. Umpqua operates as the holding company of Umpqua Bank that provides commercial and retail banking, and retail brokerage services. It operates through four segments: Wholesale Bank, Wealth Management, Retail Bank, and Home Lending. The Company offers deposit products, including non-interest bearing checking, interest bearing checking and savings, and money market accounts, as well as certificates of deposit. It also provides loans for corporate and commercial customers, such as accounts receivable and inventory financing, multi-family and equipment loans, commercial equipment leases, international trade, real estate construction loans, permanent financing products, and small business administration program financing, as well as capital markets and treasury management services. In addition, the company offers loan products for small businesses; commercial and industrial loans; residential real estate loans for the construction, purchase, and refinancing of residential owner-occupied and rental properties; and consumer loans comprising secured and unsecured personal loans, home equity and personal lines of credit, and motor vehicle loans. Further, it provides financial planning, treasury, and cash management services; retail brokerage and investment advisory services; digital, mobile, telephone, text, and online banking services; and e-commerce services. The Company serves middle market corporate, commercial, and business banking customers; individual investors; and high net worth individuals and families. As of December 31, 2020, it conducted commercial and retail banking activities at 265 locations, including 229 store locations in Oregon, Washington, California, Idaho, and Nevada. The Company was founded in 1953 and is headquartered in Portland, Oregon.

25. On October 12, 2021, the Company and Columbia Banking System jointly announced the Proposed Transaction:

TACOMA, Wash. and PORTLAND, Ore., Oct. 12, 2021 /PRNewswire/ -- Columbia Banking System, Inc. ("Columbia") (Nasdaq: COLB), the parent company of Columbia State Bank, and Umpqua Holdings Corporation ("Umpqua") (Nasdaq: UMPQ), the parent company of Umpqua Bank, today announced that they have entered into a definitive agreement under which the companies will join together in an all-stock combination.

Under the terms of the agreement, which was unanimously approved by the boards of directors of both companies, Umpqua shareholders will receive 0.5958 of a share of Columbia stock for each Umpqua share they own. Upon completion of the transaction, Umpqua shareholders will own approximately 62% and Columbia shareholders will own approximately 38% of the combined company. Once the transaction is completed, the combined organization will be a leading West Coast franchise with more than $50 billion in assets.

Cort O'Haver, President and CEO of Umpqua, said, "This is an exciting combination that brings together two well-respected organizations and talented teams, accelerating our shared strategic objectives to create the leading regional bank headquartered in the West. Together, with increased scale, we'll have the ability to provide expanded opportunities for associates and serve customers through an even more comprehensive suite of solutions. We'll also be able to strengthen our ongoing investment in our communities and deliver tremendous value for shareholders. I look forward to partnering with the Columbia team to expand our market share as a combined organization."

Columbia President and CEO Clint Stein said, "This is a historic partnership that will enhance what both banks are able to do for clients, team members and communities, while driving significant value for our shareholders. Importantly, Umpqua shares our values and relationship-based business model. We believe blending the complementary expertise, services and innovative technology of both banks will position the combined organization as the preferred bank for business and families across the West. We look forward to bringing our companies together to better serve all stakeholders."

**Strategic Benefits**

- **A West Coast Franchise Unlike Any Other** – The combined company will be the West Coast's leading regional bank with $43 billion in deposits, including $16 billion of deposits in Oregon, $15 billion in Washington, $10 billion in California and $2 billion collectively in Idaho and Nevada. The transaction strengthens the combined company's competitive position in high-growth, attractive markets, including leading market share in the Seattle, Portland and Sacramento metro areas.

- **Commercial Lending Focus Complemented by Highly-recognized Retail Franchise** – Through this combination, Umpqua and Columbia will build on each company's strong commercial and retail foundations to create an enhanced, more competitive financial institution. The combined bank's middle market focus will be strengthened by Columbia's small business expertise and Umpqua's corporate banking franchise. The combined company's low-cost core deposit base will provide price stability in rising rate environments, and its differentiated technology infrastructure will support a larger institution built for commercial and retail customers.

- **Potential to Unlock Meaningful Growth through Business Diversification and a Larger Balance Sheet** – The combined organization will offer a more comprehensive suite of products and services for commercial, consumer and small business customers, including specialized lending products, treasury management, mortgage banking and wealth management solutions. This transaction will result in a more diversified revenue mix with approximately $33 billion in loans and strong fee-based income sources.

- **Strong Technology Foundation Combined with Larger Scale Enhances Competitive Position and Customer Offerings** – The combination will create additional capacity for strategic technology investments to deliver an enhanced offering for customers. Together, Columbia and Umpqua will leverage their existing investments and capabilities to create new customer experiences and accelerate growth.

- **Strong Governance, Proven Leadership** – The combined management team has significant experience in leading and scaling institutions. With roots in many of the same markets, the companies share a deep commitment to the employees, customers and communities they serve. Columbia and Umpqua are dedicated to blending the talent and strong, relationship-based cultures of both companies.

- **Supporting Communities and Employees -** Both companies' longstanding commitments to serve their communities will remain central to the combined organization. Columbia and Umpqua will together contribute $20 million to the charitable foundation of the combined company following the close of the transaction.

**Financial Benefits**

- **Significant Earnings Accretion** – The transaction is projected to deliver approximately 25% cash EPS accretion and 23% GAAP EPS accretion to Columbia, and approximately 11% cash EPS accretion and 8% GAAP EPS accretion to Umpqua in 2023, assuming fully phased-in cost savings.

- **Value Creation** – The transaction is expected to deliver approximately $1.1 billion of value creation based on reasonable and highly achievable cost synergies[1].

- **Improved Profitability** – The combined company will be well positioned to achieve improved profitability and operating metrics, including anticipated 15% ROATCE and 1.3% ROAA in 2023, assuming fully phased-in cost savings.

**Governance, Leadership Team and Headquarters**

The combined company will be led by an executive team composed of leaders from both Columbia and Umpqua. Cort O'Haver, President and CEO of Umpqua, will serve as the Executive Chairman and Clint Stein, President and CEO of Columbia, will serve as CEO. Chris Merrywell will serve as President of Consumer Banking, Tory Nixon as President of Commercial Banking, and Ron Farnsworth as CFO. Upon closing of the transaction, the combined company's board will consist of seven directors from each of Columbia and Umpqua with Craig Eerkes, the current Chairman of Columbia, serving as the Lead Independent Director.

The combined holding company will operate under the Columbia Banking System, Inc. name and will be headquartered in Tacoma, Washington. The combined bank will operate under the Umpqua Bank name and will be headquartered in the greater Portland metropolitan area. Other major subsidiaries and divisions will include Columbia Trust Company, CB Financial Services and Columbia Private Bank, which will operate under the banner of Columbia Wealth Management, as well as Financial

> Pacific Leasing, Inc. The company will trade under Columbia's ticker symbol (COLB) on the Nasdaq Stock Market.
>
> **Timing and Approvals**
>
> The transaction is expected to close in mid-2022, subject to satisfaction of customary closing conditions, including receipt of regulatory approvals and approvals from each company's shareholders.
>
> **Advisors**
>
> Keefe, Bruyette & Woods, *A Stifel Company,* is serving as financial advisor and Sullivan & Cromwell LLP is serving as legal counsel to Columbia. J.P. Morgan Securities LLC is serving as financial advisor and Wachtell, Lipton, Rosen & Katz is serving as legal counsel to Umpqua.

\* \* \*

26.     The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Umpqua's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Registration Statement**

27.     On November 22, 2021, Umpqua and Columbia Banking System jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or

omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

28. With respect to J.P. Morgan's *Umpqua Public Trading Multiples Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by J.P. Morgan in the analysis.

29. With respect to J.P. Morgan's *Umpqua Dividend Discount Analysis*, the Registration Statement fails to disclose the inputs underlying the use of the following assumptions: Umpqua management estimates; terminal value based on 2026 estimated net income; multiple range of 10.5x to 12.5x; cost of equity ranging from 10.5% to 12.5%; marginal tax rate of 25.0%; and a Common Equity Tier 1 target of 10.0%.

30. With respect to J.P. Morgan's *Columbia Public Trading Multiples Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by J.P. Morgan in the analysis.

31. With respect to J.P. Morgan's *Columbia Dividend Discount Analysis*, the Registration Statement fails to disclose the inputs underlying the use of the following assumptions: the extrapolated Columbia street estimates; terminal value based on 2026 estimated net income; multiple range of 12.4x to 14.5x; cost of equity ranging from 9.5% to 11.5%; marginal tax rate of 27.0%; and a Common Equity Tier 1 target of 10.0%.

32. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange

Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

33. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

34. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

35. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

36. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed

11

to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

37. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

38. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

39. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40. The Individual Defendants acted as controlling persons of Umpqua within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

directors of Umpqua, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Umpqua, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

41. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

42. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Umpqua, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

43. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

directors of Umpqua, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Umpqua, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

41. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

42. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Umpqua, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

43. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

44. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

45. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

46. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.	Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: November 30, 2021              **MELWANI & CHAN LLP**

By:  */s/ Gloria Kui Melwani*
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com